Bissell, J.,
delivered the opinion of the court.
Shields & Bunger were indebted to Strauss & Co. for goods sold and delivered, and the vendors brought suit in the county court of- La Plata county to collect their claim. It was put into judgment, and, by the proceedings which we are asked to review, Strauss & Co. sought to compel the appellee, the Phenix Insurance Company, to pay a loss covered by a policy which the Insurance Company had issued. The general facts out of which the liability is said to arise are not disputed. The judgment is not assailed, and the right of Strauss & Co. to enforce their claim against the Insurance Company is only contested on the general basis of the nonliability of the company for the loss. The policy was issued on the stock owned by Shields & Bunger; there was a fire; the goods were destroyed; and the only two matters litigated are the value of the goods, and the liability of the company under their agreement of insurance.
There was evidence given by both parties respecting the amount of the stock and its value, and, as is usual in such cases, there was a wide discrepancy between the opinions of the witnesses. The opinion will not turn on this question, and we shall not express our views about it, because this is a matter for the jury to determine on the subsequent trial. The Insurance Company disputed their liability mainly on the ground of a breach of the condition against other insurance, and, to settle the question presented, it is necessary to state what was done at the time the policy was procured. *388 It was issued on the 22d of Ma}r, 1894, through the agent of the company, Gallotti, and was in the usual form of such policies. It provided generally against-false representations, and that, if the assured had made or should make any other contract of insurance without written notice to and the consent of the company indorsed thereon, then the policy was to be void. It was further stipulated that no agent of the company should have the power to waive or modify these provisions. There was another stipulation, which is of very considerable significance in the interpretation of the contract. Its substance will be stated in so far as it is deemed important. There was stamped in red on the face of the policy a condition which recited that it was a part of the consideration and basis of the rate of premium that the company should not be liable in an amount greater than three fourths of the cash value of the property described, or its pro •rata proportion of the three fourths in case of other insurance. This clause followed:
“Total insurance permitted is hereby limited to three fourths of the cash value of the property herein described; and to be concurrent herewith.”
This condition was stamped on the policy prior to its issuance by the agent, and when it was delivered to the insured. When the policy was taken out, the property was visited and examined by the agent, the amount of insurance discussed, and the agent declined to issue the policy for the amount desired, and limited it to the sum of §800 on the stock of goods, and §50.00 on the show case and store furniture and fixtures. At this time there was a policy already in force on the same property issued by another company. It was a matter of dispute whether the agent was informed/ of this policy when he issued the one in suit. The insured testified that the agent was told of it, and discussed it. This the agent strenuously denied. This was a matter for the jury to determine, and if their general verdict, which may perhaps be taken to include the determination of this question, had been rendered under instructions which left it fairly open for *389 their consideration, we should be bound to affirm the judgment because sustained by the finding.
All the substantial difficulties in the case proceed from instructions which the court gave, and those which were refused. It is quite impossible, within the limits of an ordinary opinion, to give them in detail, and we can only state generally wherein we disagree with the trial court, and the particulars in respect to which we think it erred in stating the law of the ease. There are one or two minor errors which will be noticed, though possibly they are nob of that gravity and importance which would compel us to reverse the judgment if we did not conclude the jury may have been misled, and rendered the verdict without due apprehension of the rules by which they ought to have been guided.
During the progress of the trial, the Insurance Company produced a copy of the report made by their agents of their daily business, in order to support the agent’s contention that they were without knowledge of the existence of other insurance when they issued the policy on behalf of the Phen'ix Company. The report could have been offered for no other purpose, and could be of no value as evidence, save as it supported the agent’s theory. The blank provided for a statement respecting other insurance, and, as it contained nothing on the subject, it possibly tended in a measure to support the agent’s evidence to the point that the company was without knowledge of the other policy. Clearly, this memorandum was inadmissible. In the first place, it was not an original instrument. Neither was it a memorandum which could be offered in evidence to support the defendant’s case. If it was available at all, it could only be referred to in order to refresh the recollection of the witness who was testifying about the matter contained in the memorandum, and of which he bad no definite memory without a reference to it. There was no foundation laid for its use in this particular, and, as an original document, it was not an admissible piece of testimony. Jones v. Henshall, 3 Colo. App. 448; Weaver v. Brom *390 ley, 65 Mich. 212; Carradine v. Hotchkiss, 120 N. Y. 608; Baum v. Reay, 96 Cal. 462.
We now come to the instructions. There will be no attempt to review the whole charge, nor will reference be made to any parts of it save those which are deemed inaccurate as the case stood on the conclusion of the testimony. It is quite impossible to determine the effect of particular instructions, but it may be safely assumed that instructions which are inapplicable to the proof are liable to mislead the jury, and may have a prejudicial weight and force. Possibly, concerning these to which we intend now to refer, it might justly be said the error is not of a gravity sufficient to require reversal ; but, since the judgment is to be set aside, we deem it best to refer to them, that the same difficulty may not reoccur.
The jury were told that the assured was required to state fairly and fully the facts in regard to the risk, and that any fraud or fraudulent concealment of such facts or overvaluation would avoid the policy. Just how the jury construed this instruction, or what force and effect they gave to •it, we cannot say. It was inapplicable to the condition of affairs presented by the evidence. There was no application in writing for the insurance. The agent came and inspected the property, and evidently determined the amount of risk which he was willing to take. While this instruction states the true rule wherever there is a written application, it ought not to have been given where none was made. This instruction ought not to have been given, and, unless there is some change in the evidence, should not be repeated on the subsequent trial. Philadelphia Tool Co. v. British American Assur. Co., 132 Pa. St. 236; Knop v. Insurance Co., 101 Mich. 359; Cross v. Insurance Co., 132 N. Y. 133.
The chief difficulty which the case presents springs from three instructions. If they were not on bases totally different, they were undoubtedly liable to misconstruction. The three instructions involved are numbers 2, 3, and 11. The eleventh instruction is not inaccurate as a statement of a *391 legal proposition, but it is inaccurate as applied to the case made by the testimony. The third instruction states the law correctly, and if it had been left to stand by itself, and was clearly unaffected by the eleventh, would have furnished a proper guide for the jury.
It has been held by the supreme court that where there are two instructions in the case, one of which is a correct statement of the law, and the other inaccurate, the result is, of necessity, an error. Grant v. Varney, 21 Colo. 329. Possibly that case only goes so far as to hold that, to produce this result, the conflicting instructions must be, the one accurate, and the other inaccurate. But even though one of them be accurate, and the other equally correct as a legal proposition, but inaccurate as applied to the case, and plainly liable to misconception by the jury, the same result must, of necessity, follow, and the rule remain that such a charge constitutes error.
By the second and third instructions the jury were substantially told that if they should find, as a matter of fact, that, prior to the issuance of the policy or the completion of the contract of insurance, the agent, and therefore the company, were fully advised as to the existence of other insurance on the propert}r, it would be no defense for them on the present trial to show that another policy was outstanding, notwithstanding the condition contained in their own contract that the policy was to be void in case the party had or should procure other insurance. This seems to accord with the general rule prevailing in this country. Knowles v. Insurance Co., 66 Hun, 220; Gristock v. Insurance Co., 87 Mich. 428; Insurance Co. v. Lorenz, 7 Ind. App. 266; Insurance Co. v. Norwood, 16 C. C. A. 136; Insurance Co. v. Hart, 149 Ill. 513; Renier v. Insurance Co., 74 Wis. 89; Insurance Co. v. Lewis, 30 Mich. 41; Quigley v. Trust Co., 60 Minn. 275; Gray v. Insurance Co., 84 Hun, 504; Insurance Co. v. Wilkinson, 13 Wall. 222; Wood v. Insurance Co., 149 N. Y. 382; Robbins v. Insurance Co., 149 N. Y. 477.
*392 Had these instructions with reference to the knowledge of the company been left undisturbed, the case would have presented very little difficulty. By the eleventh instruction, however, the jury were told that, by the terms of the contract of insurance which was submitted to them, no agent of the company had any power to waive or modify any of its provisions, unless the modification was written upon or attached to the policy. The jury were likewise told by the same instruction that this provision operated to prevent any waiver of any condition of the policy by any local agent, unless this waiver should be found indorsed on the policy itself. Manifestly, this statement was open to the construction that, although the agent might have known of the existence of the other insurance, yet in and of itself this knowledge would be inoperative to validate the policy, unless the agent had indorsed on the policy a waiver of the condition.
Probably the court did not intend to so limit the instruction, but gave it as asked, on a general basis that it stated a correct rule of law, overlooking the fact that there was nothing in the case to which it could be applied. This is particularly emphasized by the fact that the condition respecting other insurance stamped on the policy was the only indorsement affecting the right to take out other insurance, and, under the instruction which the court gave concerning it, the jury would conclude there had been no proper waiver, and the plaintiff could not recover. This is rendered evident by the twelfth instruction. The court interprets the indorsement to be simply a limitation on the total amount of insurance which might be taken, and rules that it does not abrogate the provision which made it incumbent on the insured to give written notice of other insurance, and secure the consent of the company thereto.
It will thus be seen that the jury had before them three instructions on apparently contradictory hypotheses : First, they were told that if the agent had knowledge, that knowledge could be taken as a waiver of the condition. They *393 were then informed that no agent had authority to waive the condition, and that any waiver must be indorsed on the policy. This was followed by a statement that the condition which was apparently indorsed to comply with the terms of the limitation prevented any other insurance, unless there was written notice of that insurance given the company, and an express consent therefor indorsed on the policy.
These instructions, taken as a whole, do not express the true rules by which the rights of the parties are to be measured. In the next place, we do not regard the instruction respecting that condition in red as a correct interpretation of it. This, apparently, was an effort on the part of the agent to indorse a consent to other insurance in writing on the policjq as well as fix the limits of it. The limitation that the insurance should be restricted to three fourths of the value of the property, limited the liability of the company to their proportionate share of the loss in case of other insurance, and in effect was the expression of a consent on the part of the company that the insured might carry insurance on the stock to the extent of three fourths of its value. This is the natural and evident import of the provision. It is the only legitimate and grammatical construction of the past participle “permitted,” and is the true construction of the language used. The insured had a right so to construe it. It is to be so taken as against the company, because, where there are two possible constructions of a contract, all doubtful provisions of insurance policies must be coustrued most favorably to the insured. This is the general doctrine, and has been recognized by our supreme court. Insurance Co. v. Horner, 14 Colo. 391; Insurance Co. v. Manning, 3 Colo. 224.
There are some minor errors urged, which we deem it unnecessary to discuss. While, possibly, other instructions are open to criticism, and the court might well have given some which were asked, and modified others, they present no substantial difficulty, and constitute no grave error. If the matters already suggested are eliminated on the subsequent trial, the verdict which the jury may render will undoubtedly set- *394 lie the rights of the parties, and conclude this controversy. For the reasons suggested, this case must be reversed, and remanded for another trial.

Reversed.

Wilson, J., not sitting.