BESSIE KASSLER v. AETNA LIFE INSURANCE COMPANY.[1]

May 9, 1930.

No. 27,918.

[1]Reported in 230 N. W. 790.

*Arthur T. Nelson,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *George D. McClintock,* for respondent.

OLSEN, C.

Plaintiff appeals from an order denying her alternative motion for judgment or a new trial.

On April 28, 1926, the defendant issued its policy of life insurance to Harris Ravitzky and received payment of the first annual premium thereon. His wife, Sarah Ravitzky, was named as beneficiary. The policy contained the usual provision that if any premium is not paid when due the policy shall cease, except that a grace of 31 days is granted in the payment of any such premium. It provides that no person other than an executive officer of the defendant can alter or waive any condition of the policy, extend the time for payment of a premium, or make any agreement which shall be binding upon the company. It also provides that within five years after default in payment of any premium the policy may be reinstated upon evidence of insurability satisfactory to the company and payment of all arrears in premiums and any indebtedness due the company, with interest. The policy was issued through the agency of H. W. Kavel, who was general agent for the company at Minneapolis.

The annual premium due April 28, 1927, was not paid at that time nor within the 31-day grace period, and the policy lapsed. On June 28, 1927, this plaintiff, Bessie Kassler, daughter of the insured, came to the office of agent Kavel and paid $10 to apply on the overdue premium. An application for reinstatement of the policy and an application for a change of the beneficiary in the policy from Sarah Ravitzky to Bessie Kassler were made out and signed by the insured. The agent issued what is termed a binding receipt, reciting the payment of $10 on account of unpaid premiums for reinstatement of the insurance; also reciting:

"said reinstatement to be effective from this date provided the Company shall be satisfied that on this day the applicant is eligible for reinstatement of the policy as a risk of the same class as when the policy was issued under its rules for reinstatement. If the Company declines to reinstate the policy as requested, the consideration received will be returned on surrender of this receipt."

Plaintiff testified that the cashier or clerk in the agent's office with whom she was dealing agreed that plaintiff could pay the balance of the unpaid premium when she had earned the necessary amount to do so, and that no definite time for such payment was fixed. This oral agreement is not important, as the agent was not authorized by the terms of the policy to make it. It is sufficient to say that neither the binding receipt nor the application for reinstatement contained any limitation as to the time when the balance of the premium was to be paid.

The application for reinstatement of the policy and for change of beneficiary, together with the policy, were sent to the home office of the company for its action thereon. Inferentially, at least, it might be found that the agent reported the transaction to the company. No medical examination was called for. The application for reinstatement stated that only $10 of the past due premium had been paid, and contained no statement or limitation as to when the balance of the premium must be paid. It had at the end a statement by the agent that he had no information of any facts which might affect the decision of the company regarding the rein-

statement and that he unreservedly recommended reinstatement. The insured was then in good health. If not otherwise informed, the application so made clearly advised the company that only part of the unpaid premium had been paid and that credit was extended for the payment of the balance. The company accepted the application, and on July 16, 1927, at its home office, reinstated the policy and changed the beneficiary therein as requested. The policy was returned to the insured.

Thereafter the agent, Kavel, wrote a number of letters to the insured requesting payment of the balance of the unpaid premium. On August 25, 1927, he wrote that he had failed to receive the balance, but would hold the matter open until August 29. On September 10 he claims to have sent to the insured a letter inclosing a check for $10 in repayment of the amount paid on the premium by plaintiff on June 28 and saying that the policy had again lapsed. Plaintiff denies that this letter and check were ever received by the insured. In any event the check was not cashed, and payment thereon was later stopped by the agent. Later, and again on October 19, the agent wrote to the insured requesting him to return the binding receipt of June 28 so that it could be returned to the company.

On October 31, 1927, the plaintiff again came to the office of agent Kavel and paid $16 on account of the balance of unpaid premium. The agent required another application for reinstatement of the policy, and such an application was signed by the insured. A binding receipt, in the same form as before, was given by the agent for the $16. There remained a balance of 80 cents to make up the premium of $26.80, and this 80 cents plaintiff paid to the agent on the next day and received an ordinary money receipt, not in the form of a binding receipt, acknowledging receipt of 80 cents "Premium on N-595444," the policy in question. The company was entitled to a few cents interest on the deferred premium, but that does not appear to have been considered or demanded. On November 1, 1927, then, the company, through its agent, had received payment of the premium due on this policy. The premium was accepted by the agent and has not been repaid. The company

by its answer tenders repayment thereof. The application for reinstatement made on October 31 was forwarded to the company. On November 7 the home office indorsed on the back thereof a direction to the agent to get a medical examination of the insured, saying that it was more than six months since the policy had lapsed. This statement was incorrect. The policy could not lapse earlier than May 28 and had since been reinstated. The insured died on November 9, before the request for medical examination could be returned to agent Kavel or acted upon.

▪ The defendant company contends that the policy had lapsed and was not in force at the time the insured died. The court directed a verdict in its favor on that ground. Specifically, the claim is that the reinstatement on July 16 was conditional and did not operate to reinstate the policy unless and until the balance of the premium was paid. We are unable so to hold on the record here presented. The company was under no obligation to reinstate the policy unless the entire premium was paid at that time. Even then it was optional with the company. Having received a partial payment only, it saw fit, with knowledge of all the material facts, to accept such payment and reinstate the policy, without imposing any conditions as to the payment of the balance of the premium. Under the terms of the policy the agent had no authority to impose any terms. The company is to be commended for helping these people out of the situation. It will not now be permitted to repudiate its own generous acts.

▪ It is further contended that even if the policy was reinstated July 16, it thereafter again lapsed because of the delay in paying the balance of the past due premium. We are unable to find on the record here presented that any such lapse occurred at any definite time, or at all, after July 16. If the policy was reinstated on that date, it could be found as a fact that there was then an extension of credit as to the balance due, without any definite time for payment. That credit would not extend beyond the next premium date. But something more than the letters here shown from agent Kavel would have to be done to lapse or forfeit the policy. Under

his limited authority he could neither reinstate nor lapse the policy. It was at least a question of fact for the jury.

The fact that the insured, on October 31, made a second application for reinstatement of the policy has some force. It tended to show a recognition on his part that the policy had lapsed. Under the circumstances shown it should not be held conclusive.

■ Waiver is not pleaded by plaintiff. But there were, no objections to evidence on that ground, and much of the evidence tending to show waiver of prompt payment and lapse of the policy was presented by defendant. Whether there was such waiver was a question of fact for the jury. Hand v. National L. S. Ins. Co. 57 Minn. 519, 59 N. W. 538; Kearns v. North American L. & C. Co. 150 Minn. 486, 185 N. W. 659; Toles v. Equitable L. A. Society, 163 Minn. 203, 203 N. W. 619.

Whether by its action on July 16, in reinstating the policy and changing the beneficiary therein, the company waived prompt payment of the balance of the premium, and whether the policy thereafter lapsed or was in force at the time of the death of the insured, were, on the record here presented, questions properly to go to the jury as questions of fact.

Order denying a new trial reversed.